COOMBS ET AL., APPELLANTS, v. BARKER ET AL.,
RESPONDENTS.

(No. 2,021.)

(Submitted November 18, 1904.  Decided January 10, 1905.)

*Corporations—Directors—Relation to Stockholders—Purchase
of Corporate Property by Directors—Redemption from Exe-
cution — Bona Fide Purchasers—Evidence—Suits for Ac-
counting—Credits.*

Corporations—Directors—Stockholders—Fiduciary Relation.
    1.  Directors of a corporation stand, in equity, in a fiduciary relation to
the corporation and stockholders, and are not allowed to profit by virtue
of their position.
Corporations—Directors—Profits—Trustees.
    2.  If by their acts the directors of a corporation have received any profits
from the company's property or business, they hold the same as trustees
for the benefit of the corporation and its stockholders.
Corporations—Directors—Transactions Voidable—When.
    3.  Transactions had by a director of a company with reference to its
property, whereby he obtains a profit, are voidable by the company or its
stockholders, if action is taken within a reasonable time.
Corporations—Directors—Bona Fide Transactions—Burden of Proof.
    4.  The burden is on directors of a corporation to show that transactions
had by them with the corporation, from which they make a profit, are fair
and *bona fide*.
Corporations—Directors—Creditors of Corporation.
    5.  Directors of a corporation may become its creditors and enforce their
claims against the corporation by the same methods as any other creditors,
but in all such cases the contract is viewed with distrust by the courts,
and is subject to the strictest scrutiny, and may be enforced only when it
is fair and equitable.
Corporations—Directors—Purchasers—Judicial Sales of Corporate Property.
    6.  A director of a corporation may become a purchaser of its property at
a judicial sale, when such sale is made by another creditor, and when the
director has no control over the proceedings; or he may purchase from a
purchaser at a judicial sale, but the acts of the purchasing director must
be fair and honest, in either case, and he must not be permitted to obtain
a dishonest advantage over the corporation or its stockholders.
Corporations—Redemption of Corporate Property by Directors.
    7.  A redemption, by the directors of a corporation of corporate property,
sold under execution, could not be deemed fair and *bona fide* where the
judgment under which the redemption was made was rendered in favor of
one of their number only two days before the redemption, on a default
based upon the acceptance of service of summons by another of their
number.
Corporations—Directors—Breach of Duty—Fraud in Law.
    8.  A breach of official duty on the part of the directors of a corporation is
fraud in law, and sufficient to warrant relief if proven, though no fraud
in fact is alleged.

Corporations—Redemption of Corporate Property by Directors—Third Persons.
9.   One who joined with the directors of a corporation, knowing that they were directors, in the redemption of corporate property, was charged with knowledge of the principle of law that such directors could not redeem the property in their own names.

Agency—Redemption of Property.
10.   One who joins, through an agent, in the redemption of property is charged with all the knowledge that the agent possesses concerning the matter.

Corporations—Redemption of Property—Directors—Third Persons—Fraud.
11.   One who was present at the time the redemption of property was agreed upon between directors of the corporation which owned the property, and who took part in the redemption, was charged with knowledge that the transaction was constructively fraudulent as against the corporation and its stockholders, and stood in no better position than the directors involved.

Corporate Property—Redemption—Agent—Good Faith—Evidence.
12.   Evidence *held* insufficient to show that one who joined with directors, through an agent, in redeeming. corporate property was a *bona fide* purchaser for value, without notice of the unlawful acts of the directors, and for a valuable consideration paid before he acquired such notice.

Corporations—Directors—Redemption of Mining Property and Working Same as Their Own—Accounting.
13.   Where directors redeemed corporate mining property, sold under execution, and held and worked it as their own, they were entitled, on being sued by the stockholders, to obtain an accounting and to a credit for whatever money they had actually paid out for the use and benefit of the company, such as money paid for the redemption of the property, in satisfaction of *bona fide* claims against the same, with interest, and also for the reasonable expenses of extracting ore from the property after redemption.

*Appeals from District Court, Cascade County; J. B. Leslie, Judge.*

ACTION by Frank Coombs and others, on their own behalf and on behalf of all other stockholders of the Montana Gold, Silver, Platinum & Tellurium Mining Company, a corporation, against David L. S. Barker and others, to have a redemption made by the directors of the company from an execution sale, declared to have been made in favor of the company, to have the individual defendants who obtained the sheriff's deed declared trustees of the property, and to obtain an accounting. From an order granting a new trial to certain defendants, and overruling a motion for new trial as against other defendants, and from a judgment in favor of certain defendants, plaintiffs appeal; and from a judgment against them, and from an order overruling in part their motion for a new trial, certain defendants appeal.   Reversed.

*Messrs. H. G. & S. H. McIntire,* and *Mr. Fletcher Maddox,* for Respondents.

The lower court apparently acted on the theory that the mere fact that the purchase or redemption from the purchasers at the sheriff's sale was made by defendants at the time they were directors of the company, even though they were *bona fide* judgment creditors of the company, seeking to protect their rights as such, was a legal fraud and that the title so acquired by them was voidable at the suit of any of the stockholders of the company. But that this theory is erroneous and is against the overwhelming weight of authority, is, we submit, beyond reasonable controversy. (3 Thompson's Commentaries on Law of Corporations, Sec. 4068; *Hallam* v. *Indiana Hotel Co.,* 56 Iowa, 178; *Beach* v. *Miller,* 130 Ill. 162, s. c. 17 Am. St. Rep. 291; *Mulanphy Savings Bank* v. *Schott,* 135 Ill. 655, s. c. 25 Am. St. Rep. 401; *Gorder* v. *Plattsmouth Canning Co.,* 36 Neb. 548, s. c. 54 N. W. Rep. 830; *Johnson* v. *Cottingham Iron, etc. Co.,* 8 Mo. App. 575; *Borland* v. *Haven,* 37 Fed. 394; *McMurty* v. *Montgomery Masonic Temple Co.,* 86 Ky. 206, s. c. 5 S. W. Rep. 570; *Duncomb* v. *New York, etc., R. Co.,* 88 N. Y. 1; *Baker* v. *Harpster,* 42 Kan. 511, s. c. 22 Pac. 415; *Stratton* v. *Allen,* 16 N. J. Eq. 229; *Hayward* v. *Pilgrim Soc.,* 21 Pick. (Mass.) 270; *Geer* v. *School District,* 16 Vt. 76; *Merrick* v. *Peru Coal Co.,* 61 Ill. 472; *Sawyer* v. *Methodist Episcopal Soc.,* 18 Vt. 405; *Ward* v. *Salem St. R. Co.,* 108 Mass. 332; *Bank Com'rs* v. *St. Lawrence Bank,* 8 Barb. (N. Y.) 436, s. c. 7 N. Y. 513; *Farmers, etc. Bank* v. *Downey,* 53 Cal. 466, s. c. 31 Am. Rep. 62; *Rider* v. *Union India Rubber Co.,* 5 Bosw. (N. Y.) 85; *Bluck* v. *Mallalue,* 27 Beav. 398; *Twin Lick Oil Co.* v. *Marbury,* 91 U. S. 587, s. c. 3 Cent. L. J. 98; 13 Albany Law Journal, 112; *Hoyle* v. *Plattsburgh, etc. R. Co.,* 54 N. Y. 314, s. c. 13 Am. Rep. 595; *College Park El. Belt Line* v. *Ide,* (Texas) 40 S. W. 64; *Oregon City* v. *Clackmas County,* (Ore.) 52 Pac. 313; *Richardson's Ex'r* v. *Green,* 133 U. S. 30; *Patterson* v. *Portland S. & R. W.,* (Ore.) 56 Pac. 410; *Janney* v. *Minneapolis Ind. Exposition,* 50 L. R.

A. 276; *Saltmarsh* v. *Spaulding,* 147 Minn. 224; *Horback* v. *Marsh,* 37 Neb. 22; *Garret* v. *Burlington Plow Co.,* 70 Iowa, 697; *Converse* v. *Sharp,* 56 N. E. 71; *Bonney* v. *Tilley,* 42 Pac. 439; *Off* v. *Jack,* 68 N. E. 427; *Wyman* v. *Bowman,* 127 Fed. 257.)

Defendants had the legal right to become creditors of the corporation; as such they had the right to merge their claims into judgment liens against the property of the company; they also had the right to purchase such claims and liens from others. (*Bonney* v. *Tilley,* 109 Cal. 346, s. c. 42 Pac. 439; *St. Louis, etc. R. Co.* v. *Chenault,* 36 Kan. 51, s. c. 12 Pac. 303; Freeman on Executions, 2d Ed., Sec. 321.)

A trustee may purchase the trust property at a judicial sale brought about by a third party, which he had taken no part in procuring and over which he could not have had control. (See *Allen* v. *Gillette,* 127 U. S. 596, citing *Prevost* v. *Gratz,* 1 Pet. C. C. 364, 378, *Twin Lick Oil Co.* v. *Marbury,* 91 U. S. 587; *Chorpenning's Appeal,* 32 Pa. St. 315; *Fisk* v. *Sarber,* 6 W. & S. 18; *Pewabic Mn'g Co.* v. *Mason,* 145 U. S. 361; *Clark* v. *Holland,* 33 N. W. 352; *Rothchild* v. *Memphis, etc. R. Co.,* 113 Fed. 476; *Felton* v. *Le Breton,* 92 Cal. 467.)

If the stockholder, after a full knowledge of the facts, stands by and allows large operations to be completed or money expended, or alterations to be made, before he brings suit, he is guilty of laches, and his remedy is barred. (2 Cook on Corporations, 5th Ed., Sec. 733, pp. 1864-5, and cases cited.) The circumstances of the discovery of the facts must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence. (2 Cook on Corporations, 5th Ed., Sec. 731, and note; *Wood* v. *Carpenter,* 101 U. S. 135-143; *New Albany* v. *Burke,* 11 Wall. 96-107; *Wullf* v. *Townsite Co.,* 15 Mont. 49; *Johnston* v. *Mining Co.,* 148 U. S. 360; *Richardson* v. *Mackall,* 124 U. S. 183; *Hoyt* v. *Latham,* 143 U. S. 553; *Hayward* v. *The Bank,* 96 U. S. 611; *Grymes* v. *Sanders,* 93 U. S. 55; *Curtis* v. *Larkin,* 94 Fed. 251.)

Stockholders of a corporation are so far integral parts of the corporation as to be privy to and conclusively bound by judgments against their corporation. (2 Black on Judgments, Sec. 583; *Hawkins* v. *Glenn,* 131 U. S. 329; *Nat'l F. & P. Works* v. *Oconto Water Co.,* 68 Fed. 1007; 1 Cook on Corporations, 5th Ed., Sec. 209 and notes.)

It was not fraudulent conduct on the part of these defendants not to inform the plaintiff stockholders of the outstanding judgments against the company, for as stockholders of the company they were privy to and conclusively bound by said judgments. (2 Black on Judgments, Sec. 583; *Hawkins* v. *Glenn,* 131 U. S. 329; *Nat'l F. & P. Co.* v. *Oconto Water Co.,* 68 Fed. 1007.) A purchase by a trustee of trust property is not void but only voidable at the election of the *cestui que trust* within a reasonable time. "The purchase money and expenditures for repairs and permanent improvements must be refunded and complete equity must be done between the parties, to authorize setting aside such purchase." (Foot note from 13 L. R. A. p. 493; *Yeackel* v. *Litchfield,* 13 Allen, 419; *Covington etc. Ry. Co.* v. *Bowler,* 4 Bush. 468; *Mason* v. *Martin,* 4 Md. 124; *People* v. *Merchants' Bank,* 35 Hun. 100.)

*Mr. A. C. Gormley,* and *Messrs. Walsh & Newman,* for Appellants.

It was the duty of the directors to protect the property of the company, and not to use their official position for their own gain. A director cannot create a relation which will make his interests antagonistic to that of his beneficiary. (3 Thompson on Corporations, Sec. 4011; *Cook* v. *Sherman,* 20 Fed. 157.) Where a director secures himself any advantage over other stockholders, equity will treat the transaction as void. (3 Thompson, 4016, 4050, 4060.) Contracts made with a corporation by a director are not void *per se,* but voidable at the option of the corporation. (3 Thompson on Corporations, Sec. 4061; *Thomas* v. *R. R. Co.,* 109 U. S. 522.) A director, before redeeming for his own benefit, must give the stockholders an op-

portunity to make advances to save the company, and if they refuse he then has the right to purchase. (3 Thompson on Corporations, Sec. 4074.)

Courts will not permit any investigation into the fairness or unfairness of the transaction, or allow the trustee to show that the dealing was for the best interest of the beneficiary, but will set the transaction aside at the mere option of the *cestui que trust.* (*Wickersham* v. *Crittendon,* 94 Cal. 17, 28 Pac. 790.) Where a party is a willful trespasser, or does not act in good faith, he is liable for the value of the ore extracted, without any allowance for expenses incurred in extracting it. This rule is well established by the following authorities: Barringer & Adams on Mines, pp. 693-6; 2 Snyder on Mines, Secs. 1622-3; 2 Lindley on Mines, Sec. 868; *Woodenware Co.* v. *U. S.,* 106 U. S. 432, Book 27, p. 230; *Benson Mining & Smelting Co.* v. *Alta M. & S. Co.,* 145 U. S. 428, Book 36, p. 762; *St. Claire* v. *Cash Gold M. & M. Co.,* 47 Pac. 488.

To make the defense of laches available, it must be shown that the party pleading it has, by reason of such laches, been placed in a worse position than he would have been if the suit had been commenced earlier. Facts must be shown which would amount to an equitable estoppel. (*Norris* v. *Haggin,* 136 U. S. 386; *Bryan* v. *Kales,* 134 U. S. 126; *Warner* v. *Daniels,* Fed. Cases 17,181; *Culver* v. *Pierson,* 15 Atl. 269; *Fitzgerald* v. *Fitzgerald et al.,* 62 N. W. 899; *Pence* v. *Langdon,* 98 U. S. 578; *Veazie* v. *Williams,* 8 How. 134; *Guernsey* v. *Davis,* 73 Pac. 101; *Pacific R. R.* v. *Atlantic R. Co.,* 20 Fed. 277; Current Law, p. 1063, Sec. 3; *Anderson* v. *Northrop,* 12 So. 318; Van Zile Eq. Pl. Sec. 151; *Petrie* v. *Badenoch,* 47 Am. St. Rep. 503; *Green* v. *Winter,* 1 Johns Ch. 26.)

If a trustee acts in good faith, he must account only for the profits; but if he acts fraudulently, or in bad faith, or becomes trustee *ex maleficio,* he is not entitled to recover his expenses. (*Hanna* v. *Clarke,* 53 Atl. 757; *Fellows* v. *Loomis,* 53 Atl. 999; *Hart's Estate,* 53 Atl. 370; *Barryhill's Appeal,* 35 Pa. St. 245; *Robinett's Appeal,* 36 Pa. St. 174.)   A trustee cannot

evade the rule prohibiting him from purchasing the property, by having it purchased in his wife's name. (See *Hindman* v. *O'Connor*, 13 L. R. A. 490; *Hoffman S. C. Co.* v. *Cumberland C. J. Co.*, 16 Md. 456; *Cumberland C. I. Co.* v. *Sherman*, 30 Barb. 553; *Dundas Appeal*, 64 Pa. St. 325-332; *Davoue* v. *Fanning*, 2 Johns Ch. 251; *Gardner* v. *Ogden*, 22 N. Y. 327; *Case* v. *Carroll*, 35 N. Y. 385; Story's Eq. Jur. Sec. 1261-1265.)

MR. COMMISSIONER CLAYBERG prepared the opinion for the court.

Five separate appeals are presented for review by the record herein, viz.: (1) By plaintiffs from an order granting a new trial in part to defendants David L. S. Barker, John C. E. Barker and J. T. Armington; (2) by plaintiffs from a judgment rendered in favor of Timothy E. Collins and Lavina A. Collins, and representatives of the estate of E. J. Barker, deceased; (3) by plaintiffs from an order overruling their motion for a new trial against Timothy E. Collins and Lavina A. Collins, and the estate of E. J. Barker, deceased; (4) by defendants David L. S. Barker, John C. E. Barker and J. T. Armington from a judgment entered against them; (5) by these same defendants from an order overruling in part their motion for a new trial. By stipulation contained in the record, but one transcript is presented for all these appeals. They were argued together, and will be considered and decided together.

The action was brought by T. C. Power & Bro., Frank Coombs, Annie S. Turner, Charles Duer, Kyle Price, E. M. Edwards, J. J. O'Marr, the estate of J. T. Bell, deceased, A. E. Thomas, W. D. Graves, D. G. Auchey and J. E. Kanouse, as stockholders in the Montana Gold, Silver, Platinum & Tellurium Mining Company, in their own behalf and in behalf of all other stockholders of said company who might come in and join in the prosecution of the suit, as plaintiffs, against David L. S. Barker, John C. E. Barker, J. T. Armington, Timothy E. Collins, Lavina A. Collins, David L. S. Barker as administrator

of the estate of E. J. Barker, deceased, Marcella O'Leary as special administratrix of the estate of E. J. Barker, deceased, W. F. O'Leary as guardian *ad litem* of Edmund J. Barker, minor son and heir of E. J. Barker, deceased, and the Montana Gold, Silver, Platinum & Tellurium Mining Company, as defendants.

The objects of the suit are to have a certain redemption made by the directors of the Montana Gold, Silver, Platinum & Tellurium Mining Company from an execution sale of the property of said company declared to have been made in favor of the company and its stockholders, to have the individual defendants who obtained the sheriff's deed to the property declared trustees of said property, to obtain an accounting by such defendants of the proceeds of said property while in their possession, to quiet title to the property, and for general relief.

Briefly stated, the complaint, in so far as its allegations are important on this hearing, is as follows: It alleges the corporate existence of defendant company, and that plaintiffs are stockholders therein; that defendants David L. S. Barker, John C. E. Barker, J. T. Armington and Timothy E. Collins were and are directors of defendant company, and stockholders therein; that defendants John C. E. Barker and J. T. Armington are the president and secretary, respectively, of said mining company; that E. J. Barker, deceased, was at the time of his death a stockholder and acting director. It alleges the appointment and qualification of David L. S. Barker as administrator of the estate of E. J. Barker, deceased, of Marcella O'Leary as special administratrix of the estate of E. J. Barker, and of W. F. O'Leary as guardian *ad litem* of Edwin J. Barker, minor son and heir of E. J. Barker, deceased; that on the 3d day of February, 1898, one John R. Fitzsimmons recovered a judgment against the defendant mining company for the sum of $2,577.94, and $19.50 costs, upon which execution was duly issued, under which a sheriff's sale was had on the 3d day of March, 1898, of all property of the company (which is then specifically described) to William Silverman and Laura Coombs

for the sum of $2,900; that on the 2d day of March, 1899, defendants John C. E. Barker, Edwin J. Barker, David L. S. Barker, J. T. Armington and Timothy E. Collins, acting through and in the name of his wife, Lavina A. Collins, redeemed said property for the sum of $6,145.90, which included the purchase price on the sheriff's sale, with interest and costs, and also two other prior judgments, and the sum of $13 taxes; that redemption was made by the parties as owners and holders of a judgment in favor of John C. E. Barker against the defendant mining company for the sum of $3,184.70; that on the 12th day of June, 1899, the sheriff executed a deed for said property so sold and redeemed, but that the deed was not called for until the 7th day of September, 1900, when it was taken and recorded; that on the 27th day of March, 1899, Edwin J. Barker filed articles of incorporation of the Big Snowy Mining Company, in which said redemptioners were named as directors and stockholders of all the stock in the corporation; that the Big Snowy Mining Company was organized with the intent on the part of the incorporators to transfer to said company all the property so redeemed, intending thereby to deprive the stockholders in said defendant mining company, other than said incorporators, of all their interest in the property, but that no conveyance or transfer to such company had yet been made; that since the redemption the defendants have exercised exclusive ownership and control of the property, and have, by the operation and leasing thereof, realized profits of several thousand dollars, the amount of which is unknown to plaintiffs, but that they greatly exceed the amount paid by defendants for the redemption of the property; that defendants have kept for their own use and benefit all of said moneys, and have never accounted therefor to said defendant mining company, to the plaintiffs, or to the other stockholders; that Timothy E. Collins, husband of Lavina A. Collins, claims an interest in the property with the other defendants, as represented by the interest of said defendant Lavina A. Collins; that defendant John C. E. Barker on the 4th day of March, 1899, conveyed to Edwin J. Barker

his pretended interest in the property, but still claims and asserts an interest in the property; that the defendants and directors of the mining company defendant have never at any time, either before the rendition of any of the judgments set forth or since, called a meeting of the stockholders of the defendant mining company for the purpose of seeing what might be done towards protecting its interest in the property, and that neither of said defendants and directors, or any of them, have attempted in any way to protect the interests of the corporation by paying its said indebtedness or making a redemption of said property for its benefit, but that all acts of said defendants and directors have been done and performed for their own individual benefit, and for the purpose of acquiring said property for themselves, and to deprive the mining company defendant and the remaining stockholders of the same, and that defendants threaten to hold said property for themselves, and adverse to the mining company and its stockholders other than themselves; that the defendants have never informed the mining company defendant or its stockholders of the adverse interest in said property so acquired by them, but have acted in bad faith toward the said mining company, and in fraud of its and plaintiffs' rights in the premises; that none of the plaintiffs knew that the defendants were intending to hold said property in their own individual right, or in hostility to the rights of the company and plaintiffs, until the recording of the sheriff's deed; that defendants have acquired no right, title or interest in said property, but that the redemption should be declared to be a redemption for and in behalf of said defendant mining company and plaintiffs and other shareholders who may come in and share the expense of the action; that the certificate of redemption and sheriff's deed issued to defendants cast a cloud upon the title of said property, which should be set aside and held for naught. The complaint then alleges the commencement of a suit in the name of the defendant mining company against the other defendants in this suit to obtain the same relief as sought in this action; that summons was issued and served on all the defend-

ants; that some of them moved to strike the complaint from the files on the ground that it was not verified by any of the officers of the corporation; that other defendants demurred to the complaint, and, upon presentation of said motion and demurrers to the court, the same were sustained, and the bill dismissed. Then follows the prayer for an accounting and other relief.

To this complaint the defendants filed separate general demurrers, which were overruled. They then, with the exception of the mining company defendant, filed separate answers. The substance of each, in so far as important to these appeals, is as follows:

Answer of Timothy E. Collins and Lavina A. Collins: Denies that Timothy E. Collins was a party to the redemption of the lands, or that he was acting for himself, in the name of his wife, Lavina A. Collins, and alleges that Lavina A. Collins effected the redemption in her own behalf, and that Timothy E. Collins had no interest in the property so redeemed, and has never had any such interest since its redemption. Denies that Timothy E. Collins was a party to the incorporation of the Big Snowy Mining Company. Admits that since the redemption the defendants David L. S. Barker, John C. E. Barker, E. J. Barker and his estate, J. T. Armington and Lavina A. Collins have exercised ownership and exclusive control over said property, but denies that Timothy E. Collins has had or exercised any control or ownership over the property. Admits that Lavina A. Collins has received as profits arising from said property a sum to exceed $400, but denies that Timothy E. Collins has ever received any profits. Admits that Timothy E. Collins is the husband of Lavina A. Collins, but denies that he claims any right, title or interest in or to said property since the redemption thereof. Alleges that Lavina A. Collins has the right to an undivided one fifth interest in said property redeemed in her own right. Admits that no meeting of the stockholders was ever called or had as alleged in the complaint, and that defendants, except Timothy E. Collins, have acquired said property for themselves, and that they intend to hold the same adversely to

the defendant mining company and stockholders.   Denies that
the board of directors, or any of them, acted in bad faith in
permitting the property to be sold, and denies that they omitted
to do anything which they were in duty bound to do as directors.
Denies that plaintiffs did not have any notice of the sale and
redemption of the property, and that plaintiffs did not know
that defendants intended to hold said property for their own use
and adversely to the rights of the corporation, and alleges that
the transactions were had in good faith, openly and publicly,
and that the transactions with reference to the sale and redemp-
tion of the property were made publicly.   Upon information
and belief, alleges that all of said transactions were within the
knowledge of plaintiffs.   Admits that Timothy E. Collins had
not acquired any right, title or interest to said property.   De-
nies that Lavina Collins has not acquired any interest.   Alleges
that she holds an undivided one-fifth interest thereof; that she
is an innocent purchaser thereof; that she has a good right,
title and interest as against the plaintiff and as against the
world.   Alleges that plaintiffs have stood by and permitted the
property to be sold; allowed the defendants, except Timothy E.
Collins, to expend a large amount of money in the redemption
of the property, well knowing that it was advertised for sale,
sold and redeemed by these defendants other than Timothy E.
Collins, and did not attempt to bring any action until, by the
work and labor of defendants, bodies of ore of considerable
value were discovered; that, by reason of laches, plaintiffs are
now estopped from instituting this suit.

Answer of Marcella O'Leary, special administratrix of the
estate of E. J. Barker, deceased:   Admits that, at the time of
the beginning of the suit, David L. S. Barker was administrator
of the estate of E. J. Barker, deceased, but alleges that he has
been superseded by herself as special administratrix of the es-
tate.   Admits that the defendant mining company was incor-
porated; that the property described in the complaint was sold
at sheriff's sale; that it was afterwards redeemed as alleged in
the complaint; that one-fifth was redeemed by E. J. Barker;

that one-fifth was redeemed by John C. E. Barker, which was afterwards conveyed to E. J. Barker. Admits that the estate of E. J. Barker claims an undivided two-fifths interest in all the property described in plaintiffs' complaint, and claims it adversely to plaintiffs. Alleges that E. J. Barker purchased said two-fifths interest, and paid therefor in good faith; that all the acts done by said E. J. Barker and his grantor, John C. E. Barker, in the redemption of said property, were done in good faith and without fraud. Alleges that plaintiffs stood by and permitted judgment to be entered against the company, and the property sold, and the same to be redeemed by the defendants; that plaintiffs saw the defendants part with their money in good faith, well knowing such property had been redeemed by defendants as individuals; and that therefore plaintiffs are estopped to maintain the action.

Answer of J. T. Armington: Denies that the mining company defendant has been carrying on business since the year 1897, that any of the defendants have acted as directors since 1897, and that the Big Snowy Mining Company was organized with the intent or design to deprive any one of any interest in the property. Alleges that the defendant mining company at the time of the redemption had no assets whatever to pay off the judgments mentioned in the complaint, save the property sold at sheriff's sale; that none of the stockholders showed any willingness or desire to advance the necessary funds to pay off the judgments, although they all well knew of the same, and of the sale of the property to satisfy the same, "and for that reason, and no other, defendant assisted in the redemption of said property as alleged in the complaint." Denies that the stockholders were not informed of said judgment and sheriff's sale thereunder. Denies that he or any of his codefendants acted in bad faith or fraud of any of plaintiffs' rights in the premises. Denies that plaintiffs did not know that the redemption of said property was intended for the benefit of the redemptioners. Alleges that plaintiffs well knew that the defendants redeemed the property openly and without bad faith, and, after such re-

demption, expended large sums of money in developing and exploiting the property; that the redemption was made with their own money, and in good faith, and with no design to defraud plaintiffs.

The answer of David L. S. Barker contains substantially the same admissions, denials and affirmative allegations as those contained in the answer of Armington.

Answer of John C. E. Barker: Denies that the organization of the Big Snowy Mining Company was made with the intent or design to deprive any one of his interest in the property. Alleges that the profits realized from operation and leasing of the mining claims amounted to $12,960.57; that the defendant mining company at the time of the redemption had no assets whatever, save and except the property sold at sheriff's sale; that none of the stockholders showed any willingness or desire to advance the necessary funds to pay off the judgments, although they knew of the same, and of the sale of the property to satisfy the same, "and for that reason, and no other, he assisted in the redemption of the property as alleged in the complaint." Denies that the stockholders of the defendant mining company were not informed of the judgments and sheriff's sale. Denies that he and his codefendants acted in bad faith or fraud of any of the plaintiffs' rights in the premises. Denies that the plaintiffs did not know that the redemption was intended for the benefit of the redemptioners. Denies that defendants have acquired no right, title or interest in the property, or that the sheriff's deed or certificate of redemption casts any cloud on said property, or that the title of the defendant mining company should be quieted. Avers that, in his individual behalf, he consents to a decree transferring all the property so redeemed to the defendant corporation, upon repayment to defendants of the sums of money so paid to effect the redemption, but insists that plaintiffs are not entitled to any accounting, because the defendants, after redeeming the property, expended large sums of money in developing and exploiting the property, in good faith, and in reliance upon the title so acquired in the redemp-

tion, all of which was known to the plaintiffs, who raised no objection thereto, but remained silent. Wherefore he claims that plaintiffs are estopped to demand any accounting.

Answer of W. F. O'Leary, guardian *ad litem* of Edwin J. Barker, an infant: Admits that the property described in the complaint was sold at sheriff's sale and afterwards redeemed, as alleged. Admits that a one-fifth interest was redeemed by E. J. Barker, and a one-fifth interest by John C. E. Barker, which was afterwards conveyed to E. J. Barker; that E. J. Barker purchased the said two-fifths interest in said property, and paid therefor in good faith; and that his estate is now owner of said property. Alleges that all the acts done by E. J. Barker and his grantor, John C. E. Barker, in the redemption of the property, were done in good faith and without fraud. The answer then sets forth laches on the part of plaintiffs, as in the other answers, and claims that they should be estopped from maintaining the action.

Each of the answers contain an admission that the property was redeemed as alleged in the complaint. Replications were filed, denying all the affirmative allegations contained in the several answers. Upon the issues thus formed the case was tried before the court, without a jury.

After the taking of testimony, the court made its findings of fact and conclusions of law, which, in so far as they are important upon this hearing, are, in substance, as follows: That the defendant mining company is a corporation, and that the plaintiffs are stockholders therein; that defendants David L. S. Barker, John C. E. Barker, J. T. Armington and Timothy E. Collins are, and for several years last past have been, the duly elected, qualified and acting directors and officers of the defendant corporation, and stockholders therein; that the defendants John C. E. Barker and J. T. Armington have been for several years last past the duly elected, qualified and acting president and secretary, respectively, of the corporation. In findings 3 and 4 the court determined the appointment and qualification of administrators of the estate of E. J. Barker, deceased, and the

guardian of Edwin J. Barker, an infant; that on the 2d day of February, 1898, one John R. Fitzsimmons recovered a judgment against the defendant mining company for $2,577.94, and $19.50 costs, upon which an execution was duly issued, the property advertised for sale, and sold on the 3d day of March, 1898, to one William Silverman and one Laura Coombs for the sum of $2,900 [here follows a description of the property sold, which corresponds with the allegations of the complaint] ; that on the 2d day of March, 1899, the said John C. E. Barker, Edwin J. Barker, David L. S. Barker, J. T. Armington and Lavina A. Collins effected a redemption of said property from said sale upon the payment of $6,145.90, which included the purchase price, with interest, two prior judgments, and the sum of $13.10 taxes; that the redemption was made by such persons as the owners of a judgment entered in favor of John C. E. Barker on the 28th day of January, 1898, against the defendant mining company, for the sum of $3,184.70; that in all of the actions, save the last named, the said John C. E. Barker accepted service of summons as president and managing agent of said defendant corporation, and judgments by default were entered, based upon said acceptance of service, and that, in the action of John C. E. Barker against the defendant mining company, J. T. Armington, as secretary of defendant mining company, accepted service of summons, and the judgment by default was entered, based upon the service so accepted; that a certificate of redemption was issued upon the redemption; that on the 12th day of June, 1900, the sheriff executed a deed to said redemptioners, conveying all the property so sold and redeemed as aforesaid, but the deed was not called for until the 7th day of September, 1900, whereupon it was delivered and recorded; that on or about the 27th day of March, 1899, the defendants John C. E. Barker, David L. S. Barker, J. T. Armington, Timothy E. Collins and E. J. Barker duly filed articles of incorporation of the Big Snowy Mining Company, in which said parties were named as directors, and, together with said Lavina A. Collins, as stockholders of all the stock of the corporation; that the

said redemptioners and directors never at any time called a meeting of the stockholders of the defendant corporation for the purpose of seeing what might be done toward protecting its interests and property, nor did they in any way attempt to protect the interests of the said corporation by paying the said indebtedness or effecting a redemption for its own benefit, but that all the acts of said plaintiffs were done and performed individually and for their own benefit, and for the purpose of acquiring said property for themselves, and depriving the defendant corporation and the remaining stockholders of the same; that the defendant directors never informed the defendant corporation or its stockholders of the adverse interest in said property so acquired by them, but acted in bad faith toward the corporation, and in fraud of its and plaintiffs' rights in the premises; that none of the plaintiffs knew that the redemptioners and defendants were attempting or intending to hold said property in their own rights, and in hostility to the defendant corporation and plaintiffs, until the recording of the sheriff's deed; that Edwin J. Barker was a *bona fide* purchaser of an undivided one-fifth interest in the property by virtue of said redemption, and that his estate is a *bona fide* purchaser, without notice, of an undivided one-fifth interest in said property, by virtue of said redemption and sheriff's deed; that Lavina A. Collins was, by virtue of said redemption and of said sheriff's deed, a *bona fide* purchaser of an undivided one-fifth interest in said property, and a purchaser for a valuable consideration, without notice; that the defendants John C. E. Barker, David L. S. Barker and J. T. Armington acquired no right, title or interest in said property by virtue of said redemption and sheriff's deed.

The court then determined the facts concerning the beginning of the suit on behalf of the company on the 4th day of June, 1901, as alleged in the complaint, and further found that plaintiffs brought this action within a reasonable time after the discovery of the fraud, and have not been guilty of any laches; that the defendants John C. E. Barker, David L. S. Barker and J. T. Armington, as officers and directors of the defendant min-

ing company, in attempting to acquire the corporation's prop-
erty by means of said redemption and sheriff's deed, violated
the trust imposed in them as such officers and directors, and
thereby committed a fraud, in law, upon said corporation, and
its stockholders, including plaintiffs; that by virtue of said acts
they became involuntarily trustees of the property of said cor-
poration for the benefit of said corporation and its stockholders,
including plaintiffs, and that said redemption should be held
for the benefit of the defendant corporation; that Edwin J.
Barker and his estate and Lavina A. Collins each acquired a
one-fifth interest in said property by virtue of said redemption
and sheriff's deed; that said certificate of redemption and sher-
iff's deed cast a cloud upon the title of said property, which
should be set aside and held for naught, so far as the interests
sought to be acquired by said John C. E. Barker, David L. S.
Barker and J. T. Armington are concerned, and that the title
of said defendant corporation in and to an undivided three-fifths
of said property should be quieted as against said defendants
last named; that plaintiffs are entitled to a decree for the use
and benefit of the said defendant company, quieting its title as
aforesaid, and to a judgment in their favor for the use and bene-
fit of said mining company against John C. E. Barker, David
L. S. Barker and J. T. Armington, jointly and severally. Upon
these findings of fact and conclusions of law, the court entered
its decree.

Defendants John C. E. Barker, J. T. Armington and David
L. S. Barker moved for a new trial, which, after having been
argued and submitted, was granted in part. The court
ordered: "That the sixth (VI) conclusion of law, in
so far as the same finds the plaintiffs entitled to
a judgment in their favor, for the use and benefit of
the corporation defendant, against the defendants J. C. E. Bar-
ker, David L. S. Barker and J. T. Armington, amounting to
$64,411.32, and also that part of the decree heretofore entered
in this cause, decreeing that said last-named defendants account
to plaintiffs, for the use and benefit of said corporation defend-

ant, for said last-named sum, and decreeing a personal judgment against said defendants therefor, be, and the same are, hereby set aside, canceled and held for naught; and plaintiffs' motion for a new trial is granted for the purpose of ascertaining any proper expenditures made by said defendants J. C. E. Barker, David L. S. Barker and J. T. Armington, and for which they would be entitled to a credit, if any, upon the amount of receipts for ores extracted from the properties described in the complaint, and heretofore found upon the trial of this cause. It being the purpose and intention of this order to grant a new trial only for the purpose of ascertaining the amount, if any, that the plaintiffs, for the use and benefit of the Montana Gold, Silver, Platinum & Tellurium Mining Company, may be entitled to against said last-named defendants on account of ores extracted from the mining properties described in the complaint and decree. And said motion for a new trial as to all other matters is hereby denied."

Motion for a new trial was also made by plaintiffs as against defendants Timothy E. Collins, Lavina A. Collins, Marcella O'Leary as administratrix of the estate of E. J. Barker, deceased, and W. F. O'Leary as guardian *ad litem* of Edwin J. Barker, an infant, which was overruled by the court.

1. Directors of a corporation stand in equity in a fiduciary capacity as to the corporation and stockholders. Whether they should be treated as trustees for such stockholders or company, in the full sense of that term, is immaterial. Standing in a fiduciary capacity, they are not allowed to profit by virtue of their position. They must exercise the utmost good faith in all transactions touching their duties to the corporation and its property. All their acts must be for the benefit of the corporation and not for their own benefit. If by their acts the directors have received any profits from the company's property or business, they hold the same as trustees for the benefit of the corporation and its sstockholders. Illustrations of this doctrine are very numerous, and the principles are so well established that citation of authorities seems unnecessary.

Our own court, speaking through Mr. Associate Justice Buck, in the case of *Gerry* v. *The Bismarck Bank,* 19 Mont. 191, 47 Pac. 810, announces this principle in the following commendable language:  "That a trustee should not be allowed to profit by his trust is a well-known fundamental doctrine of equity. No evasions, no technical subtlety of reasoning, no empty distinctions, should be tolerated when the assertion of this principle becomes necessary.   It is true that when the motives of a trustee in the neglect of his duty are not essentially bad, or are readily reconcilable with ordinary honesty of purpose, certain courts have applied this rule leniently.   *   *   *   It is true that weak toleration from the bench of frail, but penitent, humanity, has often apparently robbed the principle of its very life.   But such precedents serve only to increase plausible devices for evading its consequences.   They encourage the natural tendency of designing selfishness to substitute the vague expression 'business enterprise' for 'business honesty.' "

Transactions had by a director of a company with reference to the property of the company for any purpose, whereby the director obtains any profit, are looked upon by the courts with great suspicion; and, while they may not be invalid or void *per se,* yet they are voidable by the company or its stockholders if action is taken within a reasonable time.   There is some difference in the opinions of courts of last resort as to whether or not such transactions can ever be sustained, some holding that the stockholders in all instances may have them set aside upon repayment to the directors of the consideration paid over by them.   Others hold that such transactions may be maintained as valid if the directors show that the entire proceeding by which they were entered into was fair, open and aboveboard.

Taking the more favorable of these authorities, the burden has always been held to be upon the directors to show that the transaction was fair, in good faith, open and aboveboard.   These general principles are recognized in Sections 2970-2981 of the Civil Code.   Do the facts bring the defendant directors within these principles?

In the complaint in this case facts are alleged which distinctly show a profit to the directors redeeming, and the allegation is made that the acts of the directors whereby they acquired the property of the company were fraudulent. Defendants filed their answers, in which they specifically denied any fraudulent intent or actions, and alleged that all transactions were *bona fide* and fair.

It will be noticed that, upon the hearing of the case, none of the defendant directors except Timothy E. Collins was called as a witness. In fact, no other testimony was introduced in their behalf. Timothy E. Collins did not assume to testify as to the *bona fides* of the other directors. Upon the record, therefore, as it stands, there is no evidence given in any manner tending to show that the allegations of defendants John C. E. Barker, David L. S. Barker and J. T. Armington were truthful. They had every opportunity to prove the facts alleged in their answers, but they wholly neglected so to do.

While this court would not be authorized to draw as a conclusion, from this failure to prove, that the allegations of good faith in the answers were false, yet, inasmuch as these allegations in the answers were all denied by the replication, and as the burden of proof to maintain them was upon the several directors, and they introduced no evidence, this court is justified in holding that their acts were not in good faith and aboveboard.

The Montana Gold, Silver, Platinum & Tellurium Mining Company had title to some 13 mining claims, from which it had extracted large quantities of rich ore. After being in operation a few years, it became indebted in a sum of from $12,000 to $15,000. Its directors consisted of John C. E. Barker, David L. S. Barker, J. T. Armington, Timothy E. Collins and Frank Coombs. John C. E. Barker was president, and J. T. Armington secretary. Four out of these five directors are defendants in this action. The proof discloses that Coombs never acted as a director, except at one meeting, and that he never received notice of any subsequent meeting of the directors; that all trans-

actions in behalf of the company were carried on by the four directors who are defendants. The record discloses no attempt to borrow money to liquidate this indebtedness, which, according to the testimony of Timothy E. Collins, all arose under the management of these directors. No meeting of the stockholders was ever called to discuss ways and means to take care of it. The last stockholders' meeting was in June, 1897, when these directors were elected. Work by the company on the property was closed down in 1897 or 1898. The first judgment against the company on a portion of this indebtedness was entered in favor of the First National Bank of Great Falls some time in 1897 or 1898, the exact date not appearing in the record. Two other judgments soon followed. On the third judgment all the property of the company was levied upon and sold under execution. Other judgments were afterwards entered. No meeting of the directors or stockholders was held to devise ways and means for procuring the discharge of any of these judgments. None of the plaintiff stockholders were consulted in reference thereto, or asked to aid the company, by money or otherwise, to liquidate these obligations. All the judgments except the first had been obtained upon the acceptance of service of summons by John C. E. Barker as president of the company. The property was sold on the 3d day of March, 1898.

Collins testifies that after the sale he interviewed many of the stockholders, and advised them not to redeem. On the 28th day of February, 1899, two days prior to the expiration of the time for redemption, John C. E. Barker obtained a judgment against the company by default, based upon the acceptance of service of summons by J. T. Armington as secretary. The four defendant directors and stockholder E. J. Barker held an informal meeting at Willard's store, and concluded to redeem the property. The date of this meeting is not fixed definitely by the record, but was very shortly before the redemption was made. There was no formal meeting of the board of directors, and no notice was given to director Coombs of this meeting, nor any invitation extended to him to be present. No notice of any kind

was given to any of the plaintiff stockholders of the intention to redeem the property from the execution sale. There were no funds on hand belonging to the company with which to make the redemption. It was not sought to borrow money or to obtain it from the stockholders for this purpose.

Witness Collins, detailed what was done at this informal meeting of the trustees prior to the redemption: "My impression is that the board of trustees had a meeting after the one mentioned in these minutes. I wouldn't say it was the meeting of the board of trustees. It was either a meeting of the board of trustees, or an informal meeting of three of the members of it. The meeting was held at Willard's store for the purpose of devising ways and means to clear the property of its indebtedness and redeeming it. * * * We had a meeting a few days or a week, with these redemptioners, before the time for redemption; the purpose of the meeting being to determine whether or not we should redeem the property. We talked the matter over for a day or two, and concluded, after a great deal of consideration —the majority concluded that they would redeem. I didn't want to redeem. I wanted to abandon everything I had in the property, rather than to redeem. I didn't care a bit whether Mrs. Collins joined in the redemption. No; it was not arranged at this meeting who should redeem the property. The meeting was between J. C. E. Barker, D. L. S. Barker, J. T. Armington, E. J. Barker and myself, to determine whether we should redeem under the Barker judgment. After talking the matter over for a couple of days, those people concluded that they would put their money into it and redeem it. * * * With reference to redeeming the property, I tried to tell you the details of that. We talked the matter over. We had a whole year in which to consider, and it looked as though we were not going to do it; but a short time before the redemption we got together and talked it over quite awhile, and at last it was agreed that it should be done. * * * The meeting where it was arranged about redeeming the property was an informal meeting of the people there—of some who were officers and some who were not.

I don't think we met there as officers of the company. I wouldn't say so. Mr. Jenks Barker was in it, and he wasn't an officer of the company. I was an officer, Armington was an officer, and J. C. E. Barker was an officer. We were all directors of the company. * * * This was not a meeting of the board with reference to the redemption of this property. There may have been casual meetings between two or three of us talking about the thing—no such formal meeting as that was. At the time of this meeting where we arranged to redeem the property, as I have testified, the intention was that the property should revert—should get away from the corporation in the hands of the individuals. The purpose of that meeting and the arrangement made was practically to take this property entirely away from the stockholders if they wouldn't put up in the time in which they had to do it in. They had no time to put up after that meeting—no time at all. They were not given any notice or opportunity to put [up] after that meeting, because that meeting was almost directly before the time for redemption. The purpose of all us people that were a party to the redemption was to redeem this property in the name of these individuals, and for their benefit, and not for the benefit of the company." Collins says that the property, in his judgment, was not worth more than $5,000 to $7,500, but, because of surrounding mines, its location, and the improvements upon the property, it might have been worth from $12,000 to $15,000; but on cross-examination he says: "This property at the time of redemption might have been worth $50,000. I wouldn't say it wasn't worth $100,-000, or way in excess of that."

The redemption was effected by means of the John C. E. Barker judgment above mentioned, of which the judgment creditor, John C. E. Barker, assigned an undivided four-fifths interest to defendants David L. S. Barker, J. T. Armington, E. J. Barker and Lavina A. Collins, wife of defendant Timothy E. Collins. This redemption was made on March 2, 1899, by the payment of the amount bid on the judgment upon which the property had been sold, with interest; of the amount of the two

judgments prior to the one under which the property was sold, and interest thereon; and of the taxes then due. The deed was not issued until July, 1900, and was not delivered to the redemptioners until September, 1900, when it was recorded. By this deed the title to all the property of the company was vested in John C. E. Barker, David L. S. Barker, E. J. Barker, J. T. Armington and Lavina A. Collins. On March 23, 1899, the Big Snowy Mining Company was organized by J. T. Armington, David L. S. Barker, John C. E. Barker and E. J. Barker. Timothy E. Collins was made trustee for the first three months. The certificate of incorporation recites that Collins was subscriber for 1,000 shares of the stock.

The record discloses that from September 23, 1899, until some time in 1901, shipments of ore taken from the property were made, and the net results of such shipments amounted to $96,781. These shipments, for the most part, were made in the name of the Big Snowy Mining Company, through David L. S. Barker, agent.

The record further discloses that, at a meeting of the directors held immediately after their organization as a board, it was voted to submit to the stockholders a proposition to lease any portion or all of the property. No such meeting of the stockholders is shown, but on July 17, 1897, a lease was signed by John C. E. Barker, as president, and J. T. Armington, as secretary, to George Moore, E. J. Barker and Spencer Rowley. The lease was for one year, but it was extended six months by John C. E. Barker, as president, and J. T. Armington, as secretary. It was recorded on the 19th day of January, 1898. Another lease was executed to E. J. Barker and one Fitzsimmons on a portion of the property of the company on the 28th day of December, 1897, for one year, also executed by John C. E. Barker, as president, and J. T. Armington, as secretary. This lease was recorded on the 14th day of January, 1898. Witness Collins testifies that certain leases were in existence at the time the redemption was made. After the redemption was effected, plaintiff Coombs talked with defendant Armington in regard to the

same, and suggested that he would probably lose his stock. Armington replied: "Your stock will be all right. You will get your stock all right"—leading Coombs to believe that the redemption had been made for, and in the interest of, the company. It also appears from the record that, immediately after the redemption had been completed, defendant John C. E. Barker caused to be published in a Great Falls paper the fact that the redemption was made for the company, and that all stockholders, upon paying their just, proportionate share of redemption, might still retain their interest in the property.

The record further discloses that defendant John C. E. Barker stated to several persons that, so far as he was concerned, the redemption might be treated as having been made for the company; and, so far as is disclosed by the record, none of the defendant directors ever stated to any one, until long after redemption, that they proposed to hold the property in their own interests, and adversely to the company. By this redemption the parties redeeming succeeded in obtaining the property from the company at an expenditure of a comparatively small sum, and in less than two years thereafter received from the smelting company, by which ores mined by or in behalf of the redemptioners were treated, $96,781 in cash.

Counsel for defendant directors cite many cases to the proposition that under certain circumstances the directors of a corporation may become its creditors, and enforce their claims against the corporation as any other creditors. We have no inclination to dispute this doctrine, but agree with it, as being for the best interest of the corporation. This doctrine, however, is based upon a *contract relation* between the directors and the company whereby the debt is created, and is allowed because directors of a corporation are more familiar with the business and affairs of the corporation and its necessities than outsiders, and that it would be extremely unjust not to permit them to assist the corporation in financial troubles. When directors become creditors in this manner, they may enforce their claims by the same methods as any other creditor. It will be noticed,

however, that in all such cases the contract is viewed with distrust by the courts, and is subject to the strictest scrutiny, and may be enforced only when it is fair and equitable.

Counsel further cite numerous cases holding that a director may become a purchaser of corporation property at a judicial sale when such sale is made by another creditor, and when the director has no control over the proceedings. We also agree with this doctrine, subject to the qualification, however: That the acts of the director must be fair and honest, and he be not permitted to obtain any dishonest advantage over the corporation or stockholders.

Counsel also insist that a director may purchase property of the corporation from another purchaser at a judicial sale. This is really an application of the principles upon which the last above mentioned doctrine is based, and must be accepted only with the qualifications above noticed.

We are of the opinion that the facts of the present case do not bring it within either of the doctrines above announced. It cannot fall within the first, because of the absence of contract relation existing between director and corporation. It cannot fall within either of the others, because the directors did not become bidders at the sale, or purchase the right of a successful bidder. The latter would require a contract between the directors and bidder, which is entirely absent in this case. The directors here simply *redeemed* the property from a sale under the provisions of the statute. The purchasers are not shown to have consented to this redemption. It could have been made even as against their protest. It is also important to notice the method by which these directors acquired the right to become redemptioners. The redemption was made under a judgment rendered in favor of one of their number only two days before the redemption, which was obtained by default *based* upon the acceptance of service of the summons by another of their number. These facts render it too doubtful for this court to hold that the entire proceeding was open, aboveboard, fair and equitable.

No explanation is offered by any witness why the judgment of John C. E. Barker was obtained only two days before the time for redemption had expired. Neither is there any explanation offered as to why the summons was not served in the usual way upon the defendant corporation, or why notice of the pendency of the suit was not given to any one except the directors who took part in the redemption. There is too much opportunity for fraud under such circumstances to maintain them in absence of any explanation. The directors may have conspired among themselves to allow this judgment to be entered so short a time before the redemption, to take an assignment of the judgment and redeem the property to the utter exclusion of all the other stockholders. The manner of showing the *bona fides* of the transaction was, if such was the fact, clearly within the power of the directors. They sit by silently and say nothing, and this court, under the circumstances detailed, cannot say that their acts were *bona fide* and sufficient to maintain their position.

Counsel for defendants claim that there is no fraud in fact alleged against defendants in the complaint. Whether this is true, we deem immaterial. A breach of official duty on the part of the defendant directors is clearly alleged and relied upon. This is a fraud in law, and sufficient to warrant relief if proven. It is very difficult to distinguish the effect of fraud in fact from the effect of fraud in law. Usually the two classes concur in their effect. It is the same. This court has well said in the case of *Gerry* v. *Bismarck Bank,* 19 Mont. 191, 47 Pac. 810: "Appellants maintain that the lower court must have rendered its decisioin upon the theory that Bannister was guilty of constructive fraud,—fraud which the law would imply from any violation of his fiduciary relation as a trustee for the stockholders; and that, inasmuch as plaintiffs' complaint was wholly on the theory of actual fraud, relief cannot be afforded in the present suit for any disregard by Bannister of his fiduciary obligation as to profits. We do not disagree with the general principle that, even under our form of procedure, the proof must

substantially correspond with the allegations relied on for relief, and that a plaintiff cannot allege one cause of action, and then, even if the proofs might justify it, obtain relief on one which is essentially different in character. (See Pomeroy on Code Remedies, Sec. 553 *et seq.*) But does the complaint before us set forth different theories for recovery? We think not. It contains an averment of a fraudulent conspiracy, and the fiduciary relationship of Bannister and Child to the company is averred only as one of the means whereby the fraud was perpetrated. The latter averment supports the former. The two blend naturally into the gist of the action. Even if any line of demarcation could be preserved between the fraudulent conspiracy as one theory in this complaint, and the violation of the duties of the fiduciary relationship as another, still the two would not be essentially different. Fraud would be the basis of recovery in each."

Proof of either class of fraud is sufficient to warrant relief. Therefore allegations and proof of a breach of official duty are all that is necessary. (*Fulton* v. *Whitney,* 66 N. Y. 548; *Alaniz* v. *Casenave,* 91 Cal. 41, 27 Pac. 521; *Hoyle* v. *Plattsburgh & Montreal R. Co.,* 54 N. Y. 314, 13 Am. Rep. 595; *Morgan* v. *King,* 27 Colo. 539, 63 Pac. 416.)

Further citation of authority seems unnecessary. The entire subject is thoroughly and succinctly treated by Judge Thompson in 10 Cyc. 787 *et seq.,* where numerous authorities are cited.

It will be noticed that the allegations of the complaint as to defendants John C. E. Barker, David L. S. Barker and J. T. Armington are found to be true by the court in its findings of fact. Under the principles above laid down, and the findings of the court, we are clearly of the opinion that as to defendants John C. E. Barker, David L. S. Barker and J. T. Armington, plaintiffs are entitled to relief.

2. The court below by its findings concluded that Edwin J. Barker was a *bona fide* purchaser of an undivided one-fifth interest in said property by virtue of said redemption, and that he and his estate was a *bona fide* purchaser, without notice, of

an undivided one-fifth interest in said property by virtue of said redemption and sheriff's deed, and also concluded that said Lavina A . Collins was, by virtue of said redemption and sheriff's deed, a *bona fide* purchaser of an undivided one-fifth interest in said property, for a valuable consideration. In its conclusions of law the court also announced that the estate of E. J. Barker and Lavina A. Collins were *bona fide* purchasers, each of a one-fifth interest in said property, and were protected as such, and refused to enter any judgment or decree against them in favor of plaintiffs. In the answers of these defendants, it is alleged that they are *bona fide* purchasers, without notice.

The allegation of the joint answer of Timothy E. and Lavina A. Collins in that regard is as follows: "But they deny that the defendant Lavina A. Collins has not acquired any interest in and to said property, but allege that she has acquired, both in law and equity, an undivided one-fifth interest in and to said property; that she was an innocent purchaser thereof; that she has a good right, title and interest therein as against the plaintiffs herein and against the world." The answers of the representatives of the estate of E. J. Barker allege that all acts done by E. J. Barker and his grantor, John C. E. Barker, in the redemption of said property in their own behalf, were done in good faith and without fraud. But each of these defendants admits the allegations of the complaint as to the facts in regard to the redemption of the property. It will be noticed that defendant Lavina A. Collins does not plead that she is a *bona fide* purchaser for value, or that she paid anything for her interest in the property.

As above stated, Timothy E. Collins was the only witness who testified at the trial in behalf of the defendants. His testimony, as bearing upon the connection of Lavina A. Collins with the redemption of the property, is as follows: "My wife got the money to redeem from E. J. Barker, who advanced it to her. * * * Since redemption she has received a check for one thousand dollars, but not any more than that. * * * Mr. E. J. Barker represented her at the time the redemption was made.

* * * Mrs. Collins got none of it [the amount of $96,000, as testified to by witness Smith], and I think it is—this thousand dollars—is a part of that whole shipment, or her share of it, or I don't say her share; it was all she got out of it. Mrs. Collins' interest in the redemption is one-fifth. * * * After talking the matter over for a couple of days, those people concluded they would put their money into it and redeem it. When I left I told them I didn't care about it, and Jenks Barker said, being as I was interested with him in a business way, that my wife should have an interest in it. I told him I didn't have any money, and she didn't have any, and he said he would put the money in for her—that on account of the business relations in the Big Seven. I have always been interested with these people. Yes; he wanted to keep me interested with them. My wife had an interest in the Big Seven. I represented her interest in the Big Seven, and our relations were close and intimate. My wife never had anything to do with these mining interests. Whatever was done, I attended to it personally. She never attended to those things. She was consulted. I told her about this before she went into this, and we made up our minds that, as she got a lot of money out of the Big Seven, she would take a chance—she would invest some money. She didn't have any money. So she didn't put up any. She paid the money afterward. She didn't pay the money out of the proceeds of the mine after it was redeemed. I was present when the money was paid on this account. It was in the month of February following the date of the redemption—January or February, 1900. This money was paid over in Helena to Mr. Jenks Barker. She hadn't gotten any money at all out of this property at this time. I think that it was in July, 1900, that she made them a payment. Yes; up to that time a great many thousand dollars had been realized out of that property for these different redemptioners. As I remember, it was about eight hundred dollars that she paid to Jenks Barker. That was her part of it. That's the way I remember it. She paid that, as I remember it, by check on the Montana National Bank on her own account. She got dividend

No. 1 out of this property after the redemption, and no more. I don't know when it was she got the thousand dollars. It was the time they paid their dividend, I suppose. It was a dividend signed by E. J. Barker, agent, or on account of D. L. S. Barker, agent. I presume he was agent for the redemptioners. That is the way he signed his check, I think. * * * When this one thousand dollars was paid over, I knew it came from the proceeds of that group. Mrs. Collins received this thousand dollars at Helena. It was sent to her by mail by Mr. D. L. S. Barker. I didn't ask him anything about— Well, I did, too. I think I asked him two or three times to make a dividend, and after a while he declared a dividend, and sent my wife a thousand dollars. I had reason to believe they were getting money out of that, and I wanted my wife to have her share, and after waiting awhile they sent me this thousand dollars. I have tried ever since to get some more out of it, but I have failed so far. * * * I have deemed this property of sufficient value to defend this suit and prevent the property being turned back to the stockholders. I thought it was worth enough to justify me in doing that. * * * My purpose now is to hold onto it. * * * Mrs. Collins acted on my advice in the matter. Her interest came really from Mr. Jenks Barker. Mr. Jenks Barker had control, and she could have been left out entirely if he wanted to. If it had not been for Jenks Barker putting her in as one of the redemptioners, I think she would have been left out entirely. Jenks Barker did that voluntarily and with my consent. Not a cent was put up at that time, except by Mr. Jenks Barker. He put up the money himself. No money was paid until July, 1901, on Mrs. Collins' interest. I told Mrs. Collins about it at the time she was let in on this redemption. That was after we had our talk. Jenks and I made all the talk, and I went up to Helena and told her about it. * * * It was a business proposition whether we should put up the money to go into it or not. We determined, after consultation over it, we would redeem it. After it was agreed that we should go in on it, and she to be one of the parties, I told her about it, and that's all she had to do

with it. The meeting where it was arranged about redeeming the property was an informal meeting of the people there—of some who were officers and some who were not. I don't think we met there as officers of the company. I wouldn't say so. Mr. Jenks Barker was in it, and he wasn't an officer of the company. I was an officer, Armington was an officer, and J. C. E. Barker was an officer. We were all directors but Jenks Barker, and I suppose he knew we were officers and directors of the company. I suppose everybody knew and all the stockholders knew who the officers of the company were. They could know. I don't know whether Mrs. Collins knew who the directors of the company were, and that I was a director. I think possibly. I don't know whether she did or not. She probably did. She ought to—all these years of my connection with it. I naturally think she knew I was an officer, and who the other officers were. I don't know. The three of us—J. C. E. Barker, Armington and myself—had the active management of the property all the time, and that was thoroughly known, and who were the officers of the company. * * * I don't know whether I or my wife ever authorized D. L. S. Barker to act as our agent, but the Barkers have the majority. When the thing was working the Barkers had three interests and naturally D. L. S. Barker would be the one to represent the concern when they were working. Whether my wife authorized him, in writing or otherwise, to do it, I don't know; cannot call to mind. I do not remember if I myself ever authorized him to do anything. I may have; may not. I cannot tell. If it came up I did. I don't remember anything about it."

Taking the testimony of this witness as true, we are satisfied that defendant Lavina A. Collins was not a *bona fide* purchaser for value of any interest in the property in question. This testimony discloses that whatever money was necessary for Lavina A. Collins to redeem was paid by E. J. Barker. She was a mere volunteer in the transaction, and parted with no consideration at the time of the redemption. Witness Collins gives no testimony tending to show that Lavina A. Collins ever paid one cent

to John C. E. Barker for an undivided one-fifth interest in the judgment which he held against the mining company, through which the redemption was made. According to his testimony, she never paid E. J. Barker but $800, and the date of this payment is quite uncertain. Witness first says that it was in January or February; again, that it was in July, 1900; and again, that it was in July, 1901. But at all events, $800 was all she paid.

It is alleged in the complaint and admitted by the defendants that over $6,000 was paid on the redemption. If defendant Lavina A. Collins was the owner of a one-fifth of the property redeemed, she should have paid one-fifth of the consideration, which is above the sum of $1,200. According to the testimony of this witness, she received a dividend of $1,000. The date when this was paid to her cannot be ascertained from the record. Witness, however, states that she did not pay the $800 to E. J. Barker out of this money.

But, again, according to the testimony of this witness, Lavina A. Collins knew who were the members of the board of directors of the defendant mining company at the time of the redemption. Having such knowledge, she is charged with knowledge of the law that such directors could not redeem the property in their own names. This knowledge must be imputed to Lavina A. Collins, and yet we find her joining with the derelict directors in redeeming the property of the company for their own benefit.

But, again, E. J. Barker, according to the testimony of this witness, acted as Lavina A. Collins' agent in the redemption of the property. We find on examination of the record that he signed her name to the notice of redemption by himself as her agent. She is therefore charged with all knowledge that her agent, E. J. Barker, possessed. The testimony of Timothy E. Collins shows that E. J. Barker was present at the meeting of the trustees of the mining company when it was concluded to redeem the property. In fact, it appears generally from the record that E. J. Barker was the chief actor in the making of the redemption. Witness says that E. J. Barker knew who the

directors of the company were. And being present at the time
the redemption was agreed upon, and taking part therein, and
joining in the redemption in the manner as shown by the record,
conclusively satisfies us that he should be charged with knowl-
edge that the transaction was constructively fraudulent, and
therefore he stands in no better position than the directors in-
volved. (*San Francisco Water Co.* v. *Pattee,* 86 Cal. 623, 25
Pac. 135 ; *Lathrop* v. *Bamplon,* 31 Cal. 17, 89 Am. Dec. 141 ;
*Price* v. *Reeves,* 38 Cal. 457 ; *Hoffman Steam Coal Co.* v. *Cum-
berland Coal & Iron Co.,* 16 Md. 456, 77 Am. Dec. 311 ; *Cum-
berland Coal & Iron Co.* v. *Sherman,* 30 Barb. 553 ; *Fort* v.
*First Baptist Church,* (Tex. Civ. App.) 55 S. W. 402 ; *Neal*
v. *Bleckley,* 51 S. C. 506, 29 S. E. 249 ; *Roberts* v. *Moseley,*
64 Mo. 507.) He being the agent of Mrs. Collins in the re-
demption, she is charged with all the knowledge which he pos-
sessed. (Section 3112, Civil Code.)

Remembering that under these circumstances the burden was
upon Lavina A. Collins to show that she was a *bona fide* pur-
chaser, without any notice of the unlawful acts of the directors,
and for a valuable consideration paid before she acquired such
notice, we are not satisfied that she has met this burden with
proper proof. We are therefore clearly of the opinion that the
court below was in error when it found that defendants Lavina
A. Collins and the estate of E. J. Barker were purchasers in
good faith. The evidence does not justify such findings. We
are therefore of the opinion that these findings should be set
aside, and that defendants Lavina A. Collins and the estate of
E. J. Barker should be held responsible to plaintiffs in exactly
the same manner as the directors J. C. E. Barker, D. L. S. Bar-
ker and T. J. Armington.

3. As to the amount of the recovery to which plaintiffs are
entitled : There is no doubt but that defendants are entitled
to a credit for whatever money they have actually paid out or
expended for the use and benefit of the defendant company—
such as the money paid by them upon the redemption of the
property, in satisfaction of *bona fide* claims against the prop-

erty, interest thereon at the rate of eight per cent per annum from the dates of payment, and also the reasonable expenses of extracting the ore taken from the property after redemption. The directors of the company, having the management of its business affairs, could have proceeded with the mining operations of the company and mined all this ore at the expense of the company. It is therefore inequitable to allow plaintiffs to recover the value of the ore after extraction, without allowing the defendants the necessary expenses of extraction.

As above noticed, the defendants John C. E. Barker, David L. S. Barker and J. T. Armington made a motion for a new trial, which the court granted in so far as to allow said defendants to introduce proof as to the amount of credit to which they are entitled for extracting the ore. It is very doubtful whether the court below could have granted a new trial for this purpose upon the showing made upon the motion, but this is an equity case, and this court believes it to be its duty to arrive at exact justice between the parties, as nearly as practicable, and to enforce the time-honored maxim, "He who seeks equity must do equity."

The case was evidently tried in the court below by defendants upon the theory that plaintiffs were not entitled to an accounting until after their liability was fixed in plaintiff's favor by order or decree of the court. True, an entire accounting might have been had at the trial, but was not, and it is impossible to do exact justice between the parties in regard to such accounting on the record before us.

We therefore advise that the decree of the lower court be reversed, and that the court be directed to enter a final decree dismissing the complaint as against defendant Timothy E. Collins, and in favor of plaintiffs against John C. E. Barker, David L. S. Barker, J. T. Armington, Lavina A. Collins, Marcella O'Leary as administratrix of the estate of E. J. Barker, deceased, and W. F. O'Leary as guardian *ad litem* of Edwin J. Barker, an infant; declaring and adjudging that the redemption of the company's property made by them or their predecessors

in interest was made for the benefit of defendant mining company, and that they hold the legal title to all of said property in trust for said company; that they reconvey the same to said company, and that said company's title thereto be quieted as against said defendants, and that defendants John C. E. Barker, David L. S. Barker, J. T. Armington, Lavina A. Collins, Marcella O'Leary as administratrix of the estate of E. J. Barker, deceased, and W. F. O'Leary as guardian *ad litem* of Edwin J. Barker, an infant, account to the said mining company, or to plaintiffs in its behalf, for the value of all ores extracted from said property since said redemption; that this accounting be in execution of this decree, and, when the amount is found due, the court enter the proper supplementary decree ·in favor of plaintiffs for the use and benefit of said defendant corporation.

Per Curiam.—For the reasons stated in the foregoing opinion, it is ordered that the decree of the lower court be reversed, and that the court be directed to enter a final decree dismissing the complaint as against defendant Timothy E. Collins, and in favor of plaintiffs against John C. E. Barker, David L. S. Barker, J. T. Armington, Lavina A. Collins, Marcella O'Leary as administratrix of the estate of E. J. Barker, deceased, and W. F. O'Leary as guardian *ad litem* of Edwin J. Barker, an infant; declaring and adjudging that the redemption of the company's property made by them or their predecessors in interest was made for the benefit of defendant mining company, and that they hold the legal title to all of said property in trust for said company; that they reconvey the same to said company, and that said company's title thereto be quieted as against said defendants, and that defendants John C. E. Barker, David L. S. Barker, J. T. Armington, Lavina A. Collins, Marcella O'Leary as administratrix of the estate of E. J. Barker, deceased, and W. F. O'Leary as guardian *ad litem* of Edwin J. Barker, an infant, account to the said mining company, or to plaintiffs in its behalf, for the value of all ores extracted from said property since said redemption; that this accounting be in

execution of this decree, and, when the amount is found due, the court enter the proper supplementary decree in favor of plaintiffs for the use and benefit of said defendant corporation; and that each party to the foregoing appeals pay his own costs.

*Reversed and remanded.*

Rehearing denied February 7, 1905.