McCONNELL ET AL., Appellants, *v.* COMBINATION MINING & MILLING COMPANY, Respondents.

(No. 1,795.)

On Rehearing.

(Submitted September 27, 1904.   Decided January 21, 1905.)

(For former opinion, see 30 Mont. 239.)

*Corporations—Action Against Officers and Directors—Powers —Misappropriation of Funds—Items Chargeable—Ratification—Attorney's Fees—Traveling Expenses—Office Help— Mismanagement.*

Corporations—Directors—Stockholders—Estoppel—Ratification.
   1.   Where it does not affirmatively appear that plaintiff stockholders took part in a meeting or voted their stock, either in person or by proxy, they are not estopped to complain of an unauthorized act on the part of the directors alleged to have been ratified at such meeting.
Corporations—Stockholders—Removal of Office to Other State—Consent—Estoppel.
   2.   By agreeing to the unauthorized removal of the office of a corporation to a different city and state, stockholders did not estop themselves to complain of the wrongful use by the directors of the corporate funds after such removal.
Corporations—Directors—Unauthorized Levy of Assessment—Stockholders—Action.
   3.   The levy of an assessment by directors of a corporation without observance of the formalities required by law, and the threatened sale of stock

as delinquent, are of themselves sufficient to sustain an action by the stockholders against the directors.

Complaint—Objection—Appeal.

4.   Obiter:   An objection to a complaint, not made in the district court, will not be considered on appeal.

Corporations—Directors—Relations to Stockholders.

5.   As to the stockholders of a corporation, the directors are trustees; besides being agents of the company and stockholders, and are not permitted to so deal with the trust property as to secure therefrom a profit to themselves.

Corporations—Directors—Voting Themselves Salaries—Quorum.

6.   Directors cannot, even under a by-law authorizing it, vote a salary to one of their number, when the vote of such director is necessary to make up a quorum.

Corporations—Stockholders' Meetings—Ratification of Officers' Acts Without Information Thereon—Effect.

7.   A resolution passed at a stockholders' meeting, called for the purpose of electing directors only, approving all the acts of the trustees and officers, is not a direct and substantive act on the part of the stockholders, done with the intention of ratifying the action of the board of trustees voting certain of their number salaries, when no statements are presented to the attending stockholders as to the condition of the company, and when it does not appear that they had been informed of the payment of such salaries.

Corporations—Money Paid to Directors as Attorney's Fees—To Whom Chargeable.

8.   In an action against the officers and directors of a corporation for fraudulent misappropriation of corporate funds, the fact that sums of money were paid to the president and vice-president and charged up to the corporation as attorney's fees, neither the president nor vice-president being an attorney and no employment as such by the company having been shown, is not conclusive, and the items should be charged against defendants or not, upon proof of the real purpose for which they were expended.

Corporations—Officers—Stockholders' Meetings—Expenses—Chargeable to Whom.

9.   The expenses of the president and vice-president of a corporation in attending stockholders' meetings and in visiting directors are not prima facie proper charges against the company.

Corporations—Political Expenses—To Whom Chargeable.

10.   Expenses of lobbying a bill through the legislature, incurred by directors of a corporation, are not proper charges against the company, and the non-assenting stockholders are entitled to have the directors account to the corporation for money so expended.

Corporations—Power of Directors to Incur Necessary Office Expenses.

11.   It is within the power of directors of a corporation to employ a secretary and pay him a salary, and to incur necessary expenses for offices and office help; but expenses charged by the directors as having been incurred for such purposes during the time when the corporation was not engaged in active operations should be explained.

Corporations—Action Against Officers by Minority Stockholders—Expenses—To Whom Chargeable.

12.   Directors of a corporation cannot charge to the corporation expenses incurred by them in defending a suit brought by minority stockholders against them for a fraudulent misappropriation of the company's funds, although the company is made a nominal defendant.

Corporations—Mismanagement by Employes—Loss—To Whom Chargeable.

13.   Loss occasioned by the mismanagement of an employe of a corporation or by a natural shrinkage in the value of supplies is not prima facie chargeable to the directors, unless it is apparent that they knowingly and willfully allowed the employe to pursue a course of action with reference to the

business from which resulting loss would be equivalent to misappropriation of the assets of the company.

Corporations—Directors—Not Insurers or Guarantors of Success or Profit.

14. Directors of a corporation are not insurers of the corporate property, nor guarantors that the enterprise undertaken by the corporation shall be successful and profitable.

Corporations—Directors—Power to Incur Proper Office Expenses.

15. Directors of a corporation are *prima facie* empowered to maintain an office at the place designated in the charter for the principal office of the corporation, and a rent charge occasioned for that purpose, so far as reasonable, may be charged against the corporation.

Corporations — Directors — Power to Borrow Money—Assessments—Current Charges.

16. It is the duty of directors of a corporation to obtain money to pay current charges, either by borrowing the necessary funds or by levying assessments upon the stockholders, and the obligation of the corporation to repay money borrowed by the directors is not affected by the fraudulent diversion of part of the money by the directors, even though some of the requirements of the by-laws, as to the execution of evidences of indebtedness, were not strictly complied with.

Corporate Notes—Directors—Fraud—Action—Banks—Necessary Parties.

17. Corporate notes executed by the directors to a bank cannot be set aside for fraud or any other reason, in an action by stockholders against the directors to which the bank has not been made a party.

Judgment for President Against Corporation—Proper Charge—When.

18. A judgment obtained by the president of a corporation against the corporation for money expended by him for it, is a charge against it, to be satisfied out of the assets of the company, after such officer has accounted for funds misappropriated by him as president.


MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

It is not necessary to restate the facts of this case. The statement preceding the opinion delivered on the former hearing (30 Mont. 239, 76 Pac. 194) is entirely sufficient to meet present requirements, except certain inaccuracies therein to which attention is called before taking up a discussion of the merits. In that statement it is said that "the mines of the company were operated until June or August, 1893, when they were closed down and remained closed until June, 1895, when operations were resumed," etc. In fact, they were closed down until January, 1895. It would not be important to notice this inaccuracy but for the fact that it might mislead the trial court in taking the account which will be hereafter directed. The error was induced by a like error in the statement of facts in respondents' brief. Further along in the statement it is also said that the records of the company from July 6. 1892, the date at which

the company's office was removed to St. Louis, until October, 1898, when it was reopened in Butte, are in a somewhat chaotic condition. This is not justified by the facts appearing in the record, except so far as it applies to the records of the stockholders' meetings. The books of the company, except in this particular, seem to have been properly kept. All of the records were kept by the secretary or acting secretary, as is the rule with such companies. It was not necessary for the treasurer to keep separate accounts of his receipts and disbursements. The items of these properly appear in the books of accounts kept by the secretary, and this seems to have been the mode pursued throughout the history of this company.

After a re-examination of the record and the questions arising thereon in the light of the argument presented by counsel at the rehearing, we are content, except as appears hereafter, to let the case rest upon the conclusions stated in the former opinion. At the hearing much stress was laid upon the fact that the complaining stockholders had expressly authorized the removal of the office of the company from the city of Butte to St. Louis, Missouri, by resolution passed at the meeting in Butte on June 27, 1892, and the contention was made that by this action they estopped themselves from making complaint that the office was thereafter kept by the directors in St. Louis, even though this was not authorized by law. It might be conceded that this contention could be successfully maintained as to the other plaintiffs; yet, so far as this record shows, it does not affirmatively appear that the plaintiffs Thompson and Merrill took part in that meeting, or that they voted their stock, either in person or by proxy. But, further than this, if all of the plaintiffs had agreed to a removal of the office to St. Louis, and had thus estopped themselves to complain that it was kept there to their injury, they did not thereby agree that the funds of the company should be diverted from their appropriate uses; and, in so far as wrong was committed by the defendant directors in this regard, all the plaintiffs are in position to complain, and to have the offending directors brought to book. That they may

maintain this suit for this purpose is too well settled to permit of further argument, as appears from the authorities cited in the first paragraph of the former opinion.

Again, the levy by the directors of the assessment complained of, without observance of the formalities required by law as to notice, etc., and the threatened sale of the plaintiffs' stock as delinquent, is of itself sufficient to sustain the action. The complaint is not drawn after the most approved model, and might, perhaps, have been open to the objection that different causes of action are jumbled therein. Yet no such objection was made in the district court, and, if made here, would not be considered.

The only questions deserving further consideration arise touching the items with which the defendant directors should be charged. It is clear, under the authorities cited and discussed in the opinion, that the directors of a corporation have no power to vote salaries to themselves, as was done by the defendants. Four of them adopted by-laws providing for these salaries, and then voted three of their number salaries, who thereafter and until the bringing of this action drew them regularly, whether the company was engaged in active operations or not. Their good faith in doing this is altogether immaterial. The law characterizes such action as fraudulent. As to the stockholders, the directors are trustees, besides being agents of the company and stockholders, and may not be permitted to so deal with the trust property as to secure therefrom a profit to themselves. (*Mac-Ginniss* v. *Boston & Mont. Con. C. & S. M. Co.,* 29 Mont. 428, 75 Pac. 89; *Gerry* v. *Bismarck Bank,* 19 Mont. 191, 47 Pac. 810; *Coombs* v. *Barker,* 31 Mont. 526, 79 Pac. 1.)

In *Gerry* v. *Bismarck Bank,* after commenting upon the argument of counsel made in an attempt to draw a distinction in legal effect between actual fraud of the trustees of a banking corporation and a violation of their fiduciary obligations as showing constructive fraud only, this court said, through Mr. Justice Buck: "That a trustee should not be allowed to profit by his trust is a well-known fundamental doctrine of equity. No evasions, no technical subtlety of reasoning, no empty distinctions

should be tolerated when the assertion of this principle becomes necessary. It is true that when the motives of a trustee in the neglect of his duty are not essentially bad, or are readily reconcilable with ordinary honesty of purpose, certain courts have applied this rule leniently. It is true that, when no patently willful violation of duty appears, many judges have shown a disposition to check its force. It is true that weak toleration from the bench of frail, but penitent, humanity, has often apparently robbed the principle of its very life. But such precedents serve only to increase plausible devices for evading its consequences. They encourage the natural tendency of designing selfishness to substitute the vague expression 'business enterprise' for 'business honesty.' "

The directors had power to adopt a code of by-laws (Comp. Statutes 1887, Div. 5, Sec. 454) ; but they could not, even under a by-law, vote a salary to one of their number, when the vote of such director was necessary to make up a quorum. Under the application of this principle it makes no difference whether the trustees intended to defraud the company and the stockholders of the amount of money appropriated for the purpose of paying their salaries, or whether they acted in the utmost good faith. The result is exactly the same; and, whether the recovery of the plaintiffs be put upon the ground of actual or constructive fraud, they are nevertheless entitled to recover upon the facts shown in this record.

These remarks apply to the items of $14,374.78, paid to Chas. D. McClure as president; to the item of $1,038.15, paid to Vice President Fusz for his salary; to the item of $2,010.28, paid to Treasurer Moses Rumsey for his salary as treasurer and acting president; and to the item of $50, paid Ewing for auditing the books. These items are chargeable to the defendant directors. A portion of these sums was paid out for services never rendered, because the salaries were fixed by resolution of the board on February 25, 1893, which made the salaries payable from the 1st day of January of that year.

It is true that at the meeting of the board of directors held in

Butte, Montana, on October 27, 1898, the directors themselves undertook to ratify their own action in fixing and paying these salaries; but the record shows that there were present at that meeting directors Ewing, Fusz, L. M. Rumsey, Williams and one Merrill. Williams did not vote. Fusz was one of the officers to whom a salary had been voted at the St. Louis meeting in 1892. The resolution passed at that time could not be held to be a ratification of the action of the board in paying the salaries, unless it be conceded that Ewing, Rumsey and Merrill were a majority of the seven directors, or were entitled to count Williams' vote in favor of the resolution.

Nor can it be maintained that the resolution passed at the various stockholders' meetings amounts to a ratification of the action of the board of trustees, when the meetings were called, not for that purpose, but for the purpose of electing directors only, and no statements were presented to the stockholders as to the condition of the company, or as to what business had been transacted by them during the year. So far as the record shows, the stockholders were not informed as to the payment of these salaries by the board of directors, and the resolution itself, which is set out in the sixth paragraph of the former opinion, was not a direct and substantive act on the part of the stockholders, done with the intention to ratify the action of the board.

A principal cannot ratify an unauthorized act of his agent about which he knows nothing, and as to all those acts done by an agent beyond the scope of his authoritiy the principal is not bound to know anything, and he cannot ratify them until they are brought specifically to his attention. The same principle applies to the relations of the directors of a corporation to their stockholders in matters which must be authorized or ratified by action on the part of the stockholders.

We held in the former opinion that, because of the condition of the records of the stockholders' meetings subsequent to the removal of the office to the city of St. Louis, they were not admissible as evidence tending to show a ratification; but, whether

admissible or not, the result is the same, for the reasons just stated.

It must not be overlooked, however, that the whole amount for which Ewing is charged, and a portion of the amounts for which M. Rumsey and Fusz are ·charged, were represented by checks drawn for them, respectively, but never cashed. If it should appear on the accounting that these checks have never been delivered or paid, the defendants will be entitled to a credit for these respective amounts.

Touching the items paid out as attorney's fees, viz., $500 paid to President McClure and $400 paid to Vice President Fusz, the evidence of these two directors is vague and indefinite. If these sums of money were actually spent for the benefit of the company in the making of salt contracts and in the investigation of methods for the reduction of ores, they are proper charges against the company. President McClure testified that he was of the impression that the $500 had been spent by him in connection with salt contracts; and touching the $400 Vice President Fusz testified that his recollection was that the $400 was spent in the investigation of methods for reducing ores. It should appear definitely and clearly for what purposes these expenditures were made. The president and vice president of a corporation, not being attorneys at law, and not showing any employment by the company to perform legal services, cannot charge the company for any sums of money under the guise of attorney's fees. The fact that these items are charged as attorney's fees, however, is not conclusive, and they should be charged or not upon proof of the real purpose for which they were expended.

Touching the $75 paid to President McClure for expenses of attending stockholders' meeting, and $73.20 paid to Vice President Fusz for visiting directors in Montana, it may be said in brief that *prima facie* these are not proper charges against the company. Neither the president nor the vice president is entitled to collect for expenses in attending stockholders' meetings or in visiting the directors. Stockholders ·may attend stock-

holders' meetings or not, as they please.   They may vote by proxy, and thus avoid expense.   Expenses attendant upon stockholders' meetings, so far as stockholders are concerned, are necessarily chargeable to the stockholders themselves.   As a matter of fact there was no meeting of the directors in Montana, so far as the record shows, during the year 1896.   If Vice President Fusz cared to visit the individual directors in Montana, it was certainly his duty to pay his own expenses.

The item of $700 paid to Lewis S. McClure as an attorney's fee was a diversion of this amount of money from the purposes of the corporation to a purpose wholly outside of the range of its legitimate purposes.   The testimony shows that it was a contribution to a political movement; nothing more, nothing less. The remarks upon this item in the former opinion are in point, and it is not necessary to enlarge upon them.   This item should be charged to the directors, unless it be shown that it was authorized by the stockholders.   The same may be said of the item of $562.55.   In plain language, this was paid out as the company's portion of the expense of lobbying a bill through the legislature —a purpose wholly foreign to those of a mining corporation— and the stockholders who did not assent thereto are certainly entitled to have the directors account to the company for the same.

The items of $7,760.01, salary of secretary, $1,089.85 for office boys, etc., $595.20 for telephone, and $2,147.94 for office supplies, etc., are such expenses as might have been incurred by the board of directors in the performance of their ordinary duties.   It was within their power to employ a secretary, and to pay him a salary.   It was also within their power to incur the necessary expenses for an office and for help in connection with it.   It is a proper inquiry, however, as to whether or not it was necessary to have a secretary during those periods when the company was not engaged in active operations, and when there was no work for a secretary to do.   When the accounting is taken, the district court should hear testimony, if the plaintiffs desire, to determine whether or not the item of $7,760.01, paid

to Jesse B. Mellor, was reasonable, under all the circumstances, and the directors should be charged with so much of it only as appears to be an unnecessary and unreasonable charge against the company. This remark disposes of the items: "Office boys at St. Louis," $1,089.85; for telephone, $595.20; and for office supplies, etc., $2,147.94. It seems, *prima facie,* unnecessary and unreasonable that any portion of these large bills of expense should have been incurred during many months while the company was not engaged in mining operations. The fact that during the time Secretary Mellor was receiving his salary he was employed as private secretary of McClure, does not of itself reflect light upon the reasonableness of the salary paid him by the company. It would become important only upon a showing that the services rendered to McClure personally were in fact paid for out of the company's funds, and that his ostensible employment by the company was for the personal benefit of McClure. Our attention has not been called to any evidence on this point.

The item of $1,056.65, charged upon the books in favor of Paul A. Fusz, C. T. Rhoades, Boyd Bros. and W. J. Schofield for expenses of this suit, should not be allowed in favor of the defendant directors. In this case we have the plaintiffs complaining of these directors for the diversion of funds of the company to unlawful purposes. The company was made a defendant because it could not be plaintiff. This suit is on behalf of the company. It would certainly seem to be a travesty upon justice that the company should be compelled to pay the expenses of a suit brought by minority stockholders for the purpose of restoring delinquent trustees to a proper sense of their duties. The expenses of this suit became necessary through their wrongful action. They have resisted it, and this expense was incurred for the purpose of enabling them to make good their defense against the complaining stockholders. Under such circumstances this item should be charged to the defendant directors.

No complaint is made in the pleadings as to the item of $5,-

076, "inexplainable shortages." Nor does the evidence throw any light upon it. There is a suggestion in the testimony of one of the witnesses that it might be the result of mismanagement on the part of the company storekeeper, or owing to a natural shrinkage in value of supplies. If it resulted from either of these causes, it would not, *prima facie*, be chargeable to the directors. The mismanagement of an employe of the company does not necessarily charge the directors for any loss occasioned thereby, unless it is apparent that they knowingly and willfully allowed such employe to pursue a course of action with reference to the business from which resulting loss would be equivalent to misappropriation of the assets of the company. The directors, when acting within the scope of their authority, are bound only to the exercise of good faith and the use of their best judgment in the conduct of the business. They cannot be held liable for mere mismanagement on the part of the employes of the company. Their duties do not make them insurers of the property of the company, nor guarantors that the enterprise undertaken by the corporation shall be successful and profitable. Upon the record it cannot be determined whether the directors were at fault with reference to this item.

*Prima facie* the directors were empowered to maintain an office at Butte after they were ordered to return the records to the state of Montana. That was the place designated in the charter for the principal office. The charge of $180 per month for this purpose, except so far as it may appear to have been unreasonable and unnecessary, is a proper charge, and they may not be held to account for it. It appears that this expense was soon stopped by a removel of the office to Granite county, whereupon it became wholly unnecessary.

No contention whatever was made in the district court concerning the supplies on hand and the diamond drill. These items are not mentioned in the pleadings among the specific charges of misappropriation, and they are mentioned only incidentally in the evidence. It seems to have been assumed that they were not at all within the purview of the controversy.

Under these circumstances we shall not venture an opinion with reference to them. Nor was any complaint made touching the silver bullion withdrawn from the bank. Indeed, it appears incidentally that it was sold, and the proceeds accounted for.

The most serious question arises upon the contention of the parties with reference to the conduct of the directors in permitting the judgments to be taken against the company in the United States Circuit Court for the District of Montana in favor of the National Bank of St. Louis and Charles D. McClure, the president. These were for $29,903.06 and $9,583.30, respectively. They were rendered in actions brought by the plaintiffs during the pendency of this action, and were for moneys borrowed by the directors for the use of the company, and actually expended in its behalf. The claim of the bank was based upon two promissory notes—one payable to itself, from the defendant company for $3,500, with accrued interest; and the other for the sum of $18,000, with accrued interest, due and payable from the defendant company to the State Bank of St. Louis, and by it transferred to the plaintiff bank. The former of these was executed after the commencement of this action for moneys obtained by the directors to pay taxes, insurance and other current expenses of the company. The latter was a renewal of two notes for $10,000 each, after certain payments had been made thereon, executed in December, 1896, and March, 1897, for moneys obtained for a like purpose. Doubtless some of these funds were used to pay salaries also, though this appears only by inference. The claim of McClure was for money advanced to the company to repay to stockholders the assessment made upon the stock of the company, to enjoin the collection of which was one of the purposes of this action. Certain of the stockholders had paid their share of it without complaint. But when this action was brought the assessment was declared void for want of legal notice. Thereupon McClure advanced the money to repay the stockholders, the funds derived from their payments having been expended for other purposes, conceived by the directors to be legitimate.

During the period, as a whole, between June 27, 1892, and the date of the institution of this action, the company's business did not result in profit. Sometimes there was a surplus; generally there was none. After the operations was finally closed in February, 1897, there was no income. Indeed, on March 4th of that year there had been contracted an interest-bearing debt of $20,000, consisting of the two $10,000 notes referred to above. The whole of these funds thus obtained, so far as we can judge, except the portion expended to pay the last item of expense, namely, the salaries, and perhaps the expense of keeping an office in St. Louis, were devoted to legitimate purposes of the company. It was the manifest duty of the directors to obtain money to pay these current charges, either by borrowing or by levying an assessment upon the stockholders. Their devotion of a part of the funds borrowed to unlawful purposes did not affect the obligations of the company to the banks, even though it be conceded that the requirements of the by-laws as to the execution of the notes were not strictly observed. The company obtained the money and used it. The bank was entitled to have its demands satisfied; and, even after this action was begun, the current expenses continued, except that the payment of salaries ceased, and moneys borrowed to pay them were charged against the company. Under the circumstances the directors could not resist the collection of the demand by the bank, even though it was done by the sale of property belonging to the company. The bank's judgment is now satisfied. But, if it were not, it would be impossible to investigate it in this proceeding, and set it aside for fraud or any other reason, because, if for no other reason, the bank is not a party to this suit. If the property of the company, however, was thus sacrificed, and the plaintiffs suffered loss, this would probably furnish an additional ground for relief against the defendant directors. But such ground of relief was not contemplated by the pleadings in this case, nor agitated in the proof on the trial.

So far as the judgment of McClure is concerned, it also stands as a charge against the company, to be satisfied out of any assets

belonging to the company after he and his codefendants have accounted for the funds misappropriated by them; for it would be manifestly wrong to compel him to account to the company with his codefendants for the misappropriated moneys, and then leave him without any means for reimbursement. This would be tantamount to compelling him to make a double return to the company for his wrong. The money collected by the company upon the unlawful assessment was devoted to the purposes of the company. Having been unlawfully collected, it became a debt from the company to the stockholders who had paid it. After he had discharged his duty to the company, it should in turn discharge its duty to him, thus reimbursing the outlay made by him.

The judgment and order denying a new trial are reversed, and the cause is remanded to the district court, with directions to take an account of all moneys wrongfully paid out by the defendant directors, and to charge them therewith, together with interest thereon at the legal rate upon each item, from the date of its misappropriation until the date of the account, and to render a judgment against them for the amount so found due. For this purpose the court should hear such other testimony as may be necessary to take the account in accordance with the suggestions herein contained.

*Reversed and remanded.*

Mr. Justice Milburn and Mr. Justice Holloway concur.